IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK WILSON, ) | No. C 13-2436 RMW (PR) |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION FOR |
| ) | WRIT OF HABEAS CORPUS; |
| v. ) | DENYING CERTIFICATE OF |
| ) | APPEALABILITY |
| WILLIAM KNIPP, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and DENIES the petition.

**BACKGROUND**

Petitioner was charged and convicted by a jury of multiple sexual offenses. The jury found true an enhancement for kidnapping. The jury also found that petitioner had sustained four prior strike convictions. On March 18, 2011, the trial court sentenced petitioner to a term of 58 years to life in state prison. On October 30, 2012, the California Court of Appeal affirmed.

On January 23, 2013, the California Supreme Court denied a petition for review. Petitioner filed the instant federal habeas petition on May 30, 2013.

As all the details of petitioner's crime are not essential to the disposition of his federal habeas petition, the court will summarize the events below and expand on the facts as needed in the discussion of the claims.

At trial, Jane Doe testified that in January 2003, she was leaving the BART station in Oakland around 8:00 p.m. when she noticed a black man standing at the bottom of the escalator. People v. Wilson, No. A131551, 2012 WL 5928727, at *1 (Cal. App. Oct. 30, 2012). He followed about 10-20 feet behind her as she began walking home, and he was on his cell phone. Id. As Doe walked, the man grabbed her and forced her to cross the street into a nearby park. Id. The man asked if Doe had drugs or money, to which she responded that she only had 50 cents and a BART ticket. Id. Doe testified that the man forced her to go through a hole in the fence and up to a hillside where it was very dark. Id. The man instructed Doe to take off her clothes, raped her, and then took her BART ticket and 50 cents and left. Id. at *2.

Doe noticed that the man had braided and beaded hair, but did not get a good look at the man's face. Id. At trial, Doe could not identify petitioner as the man who sexually assaulted her. Id. Doe was eventually taken to the hospital where she was given a sexual assault examination, and swabs were taken from Doe's breasts, vagina, and the perianal area around Doe's anus. Id.

In 2008, DNA from a buccal swab was obtained from petitioner. Id. at *3. Petitioner's DNA profile matched the vaginal and rectal evidence samples taken from Doe in 2003 in each of the 13 loci examined in those samples. Id. Also in 2008, the police showed a photo lineup to Doe. Id. Doe could not identify her assailant because she never saw his face. Id. at *2. When asked off the record if Doe thought she could select one of the photographed men as her assailant, Doe selected a picture of petitioner because he was the only one with braids in his hair. Id.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd
2

**DISCUSSION**

A.   Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

3

evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Here, that decision is the California Court of Appeal.

B.    Petitioner's Claims

As grounds for federal habeas relief petitioner claims that: (1) his right to effective assistance of counsel was violated when his defense counsel permitted the prosecutor to make comments to the jury regarding what the defense did with available DNA evidence; (2) the trial court's comment to the jury that the prosecutor's assessment that the "science has been established" regarding the "product rule" violated petitioner's right to due process; and (3) the prosecutor committed misconduct and thus violated petitioner's right to due process when the prosecutor vouched to the jury that the DNA evidence was impeccable.

1.    Comments on available DNA evidence

Petitioner claims that the trial court allowed the prosecution to comment on the availability of DNA samples for re-testing by the defense by suggesting to the jury that, had the results of any re-testing been favorable to petitioner, defense counsel would have presented them at trial. Petitioner argues that such comments violated his right to effective assistance of counsel. Specifically, on direct appeal, petitioner argued that the right to effective assistance of counsel included the right to consult with expert witnesses in confidence.

Prior to trial, the trial court ordered the Oakland Police Department to release the biological evidence gathered for this case to the defense, and also authorized the collection of DNA samples of petitioner for comparison purposes. Wilson, 2012 WL 5928728, at *3. Defense counsel filed a motion in limine to exclude "any reference to the fact that the DNA evidence in this case was available for retesting, was sent to . . . [a defense lab] for retesting, or was in fact retested." Id. The prosecution filed a motion requesting permission to introduce the

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

4

fact that the biological evidence was made available to the defense for analysis, and that it believed it should be allowed to comment on the absence of any differing result as a result of defense counsel's testing. Id. at *4. Ultimately, the trial court denied defense counsel's motion and granted the prosecution's motion, ruling "that the prosecutor could introduce evidence that the biological evidence was made available to the defense for retesting and comment on the defense failure to present evidence of any results from such retesting." Id. After the jury rendered its verdict, petitioner filed a motion for a new trial, arguing that the prosecution's references to defense counsel's retesting and producing no differing result violated petitioner's Sixth Amendment right to effective assistance of counsel. Id. at *5.

The California Court of Appeal rejected this claim. It relied upon state court cases in which the California Supreme Court "has indicated that, although the prosecution cannot refer to a defendant's failure to take the stand in his own defense, that rule "does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses." Id. at *7 (citations and internal quotations omitted). The state appellate court distinguished Prince v. Superior Court, 8 Cal. App. 4th 1176 (1992), relied upon by petitioner, which noted that the effective assistance of counsel included the assistance of experts in preparing a defense and communicating with them in confidence. Wilson, 2012 WL 5928728, at *6.

Petitioner's ineffective assistance of counsel claim is not the familiar claim that counsel failed to perform competently, as described by Strickland v. Washington, 466 U.S. 668 (1984). Rather, petitioner's claim is that he was denied the effective assistance of counsel because the trial court allowed the prosecutor to improperly comment on the availability of DNA re-testing, thus interfering with counsel's ability to provide effective assistance. There is no clearly established law that implicates the effective assistance of counsel when the court allows the jury to be informed that a defendant consulted an expert, or conducted his own DNA tests but decided not to present their results to the jury.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

5

Federal court must defer to the state court's decision if a Supreme Court decision does not "squarely address the issue," or does not "establish a legal principle that clearly extends to a new context to the extent required by the Supreme Court." Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (alterations and quotes omitted).

Here, petitioner's claim fails because there is no "clearly established Federal law, as determined by the Supreme Court of the United States," which is a necessary predicate to relief in any habeas case governed by the AEDPA. See 28 U.S.C. § 2254(d)(1). Without the existence of clearly established Federal law, the state court's adjudication of the claim cannot be said to be contrary to or an unreasonable application of such law. See Carey v. Musladin, 549 U.S. 70, 77 (2006); see, e.g., id. at 76-77 (given the lack of holdings from the Supreme Court and the wide divergence of the lower courts on the issue of the potentially prejudicial effect of spectators' courtroom conduct, the state court's determination that the petitioner was not inherently prejudiced by spectators wearing buttons depicting the murder victim was not contrary to or an unreasonable application of clearly established Supreme Court law); Varghese v. Uribe, 736 F.3d 817, 821 (9th Cir. 2013) (because there is no Supreme Court authority that squarely addresses petitioner's claim – that a criminal defendant's rights to counsel and due process are violated when the state court conditions his access to, and testing of, the prosecution's limited evidence on the disclosure of the test results to the prosecution – the state appellate court had no specific rule to apply, so its decision was not an unreasonable application of clearly established Supreme Court precedent).

Moreover, petitioner cites to no Supreme Court decision or principle addressing his claim. Even in petitioner's opening brief to the state appellate court, petitioner cited to Gideon v. Wainwright, 372 U.S. 335, 339 (1963), and United States v. Cronic, 466 U.S. 648, 655 (1984), to support his claim. However, neither of those cases established a principle that "clearly extends" to the circumstances of this case. See Moses, 555 F.3d at 754. Further, under Federal law, prosecutors are permitted to call attention to the defendant's failure to present exculpatory evidence. See, e.g., United States v. Mayans, 17 F.3d 1174, 1185 (9th Cir. 1994).

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

6

1      Accordingly, the state courts' rejection of petitioner's claim is not contrary to, or an
2 unreasonable application of, clearly established Supreme Court law.

3      2.      Comments on "product rule"[1] and statistical bases

4      Petitioner argues that the trial court erred when it allowed the prosecutor to argue that the
5 product rule was "established science," and then endorsed the prosecutor's position that
6 petitioner could not legitimately attack either the product rule or the Hardy-Weinberg
7 equilibrium theory[2] (another statistical method) as tools that could establish reasonable doubt.

8      At trial, petitioner challenged the admissibility of the prosecution's DNA evidence and
9 requested a Kelly[3] hearing. Defense counsel conceded that no hearing was necessary because

---

[1]  "The genetic traits examined to create a DNA profile are regions or loci of highly variable and repetitive DNA. The function of this type of DNA is unknown, but its polymorphic nature provides an opportunity to identify the differences between people. Because a person inherits a set of chromosomes (22 plus an X or Y) from each parent, every genetic locus has two versions (alleles). For statistical analysis, the frequency with which each possible allele at each locus exists in various populations has been estimated through studies of population databases. From these tabulated frequencies, the frequency of a perpetrator's overall DNA profile can be estimated: the frequencies of the two alleles at every locus in a perpetrator's profile are all assigned, then multiplied together to obtain the frequency of the entire multilocus profile in the relevant population. This method is known as the 'product rule.'" People v. Koua Xiong, 215 Cal. App. 4th 1259, 1270 (2013).

[2]  "Hardy-Weinberg equilibrium has been defined as the condition, for a particular genetic locus and a particular population, with the following properties: allele frequencies at the locus are constant in the population over time and there is no statistical correlation between the two alleles possessed by individuals in the population; such a condition is approached in large randomly mating populations in the absence of selection, migration, and mutation." People v. Soto, 21 Cal. 4th 512, 526 (1999).

[3]  The Kelly/Frye standard is the California state law standard "by which new scientific techniques should be measured before evidence derived therefrom may be admitted in court." People v. Leahy, 8 Cal. 4th 587, 612 (1994). See People v. Kelly, 17 Cal. 3d 24 (1976); Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). "Under Kelly/Frye, the proponent of evidence derived from a new scientific methodology must satisfy three prongs, by showing, first, that the reliability of the new technique has gained general acceptance in the relevant scientific community, second, that the expert testifying to that effect is qualified to do so, and, third, that correct scientific procedures were used in the particular case." Cooper v. Brown, 510 F.3d 870, 944 n.28 (9th Cir. 2007)

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

7

1  the DNA evidence testing technologies used "have all been approved by the courts as being
2  scientifically reliable, at least in the abstract." <u>Wilson</u>, 2012 WL 5928728, at *8.  However,
3  petitioner intended to focus on whether the correct scientific procedures were used in petitioner's
4  particular case, and not whether the methods were generally reliable.  A review of what
5  happened at trial, as summarized by the California Court of Appeal, is helpful.

> In his opening statement, defense counsel attacked the reliability of the prosecution's DNA rarity statistics.  He contended that the jury would conclude at the end of the case that nobody could precisely predict the rarity of the DNA profiles involved, and that even [Criminalist Chani] Sentiwany could not do so.
>
> In her testimony, Sentiwany described the methodology by which she calculated the frequency with which the DNA profile she obtained from the biological evidence would appear in general population groups.  She stated that the genetic characteristics of each location used for forensic testing purposes are "all inherited independently of the others"; thus, one can employ the product rule because one value does not predict another value.  She also stated that "the population information that was gathered to show how frequent or rare these alleles occur is in published journal articles, so that's accessible to outside people."
>
> During Sentiwany's cross-examination, defense counsel focused on challenging the statistical basis for calculating the random match probability, including the "product rule" and the "'Hardy-Weinberg equilibrium' theorem." Sentiwany testified that "the product rule uses the fact that each area of the DNA is inherited independently from the other one[.]"  She also said that within one locus, forensic DNA scientists assume that the allele inherited from one parent is unaffected by the allele inherited by the other parent, as would be consistent with patterns of random mating.  She identified this as the "Hardy-Weinberg equilibrium," and further testified that there are compensating adjustments built into the frequency estimate formulae.  In the random match probability calculation, this adjustment is termed "theta factor" and given a particular value, .01 percent.  She said that "almost all" DNA analysts in the United States use the same population frequency calculations that she used to derive for statistical estimates, indicating that this method was the standard in the field.
>
> Questioned further, Sentiwany did not agree that forensic science experts disputed the validity of developing statistical probabilities based on the published sample sizes used for that purpose.  She also testified that she was familiar with the report of adventitious partial matches in an Arizona database. However, she testified that the data was not generated as part of a study, and that there had been no follow-up.
>
> The prosecutor stated in his initial closing argument to the jury that DNA evidence was the standard, highly reliable, powerful evidence, and "[p]robably the most reliable current method for establishing identity that science knows." The prosecutor further argued that nothing Sentiwany testified about "indicated that there is anybody in the scientific community who

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

8

questioned that those frequency statistics are reliable as used by forensic chemists in this country." The defense made no objection to any of these remarks.

In his closing argument, defense counsel attacked the reliability of the DNA statistics, without objection from the prosecution. He questioned the statistical methodology used by Sentiwany, including the validity of using population samples of 200 to 300 people to determine the allele frequencies. He asserted that scientists could, but did not, use large law enforcement and military DNA databases. He argued that the validity of the product rule depended upon flawed assumptions regarding kinship in breeding patterns, and that these assumptions underlie the Hardy-Weinberg equilibrium. He also suggested that the statistics used ignore the possibility that defendant's brother shared his DNA profile.

In his rebuttal, the prosecutor responded to the defense arguments by first contending that it was "completely impermissible" for the defense to ask the jury to "judge the validity of the product rule." The defense objected to the argument that it was inappropriate for the jury to consider the product rule, to which the court agreed. After a sidebar, the prosecutor stated:

"With respect to the product rule, it is important to understand a little background about any science that comes to you in a court of law in the State of California.

"First of all, a scientist can't just walk in here and start talking about scientific procedures. When DNA first became used in a criminal forensic setting, there were extensive hearings on whether DNA evidence, and in this case the PCR-STR testing, whether these were widely accepted in the scientific community as being legitimate science. As being acceptable science. All right.

"Nobody ever got to hear DNA like you heard today until it went all the way to the California Supreme Court and back down saying that scientific methodology has been widely accepted in the scientific community."

Defense counsel objected to this line of argument because "[t]he question isn't the admissibility of the DNA." The court overruled the objection. The prosecutor continued, "In addition, this product rule that [defense counsel] wanted to represent himself as an expert in, the same thing has happened. That product rule has been ruled by the California Supreme Court . . . ." This led to the following exchange:

"[DEFENSE COUNSEL]: Judge, I object to this.

"THE COURT: All right, ladies and gentlemen. [The prosecutor] is right as far as his interpretation of the case. The science has been established. The process has been established. How it's applied in the particular case is subject to criticism in a particular case. [¶]

"[DEFENSE COUNSEL]: Yes. Correct. You decide all that.

"[PROSECUTOR]: I haven't said anything different, although I keep getting interrupted.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

9

> "It's for you to decide the weight of it. But what [defense counsel] is asking you to do is question [the] very validity of it because he's asking you to say: Well, if I as a juror here don't really think that the Hardy-Weinberg principles of equilibrium apply, then that can undermine the product rule and therefore that can create reasonable doubt.
>
> "Well, on a lot of fronts that's wrong because again, the California Supreme Court . . . .
>
> "[DEFENSE COUNSEL]: Judge, I object to this. This is apples and oranges.
>
> "[PROSECUTOR]: I think I've made it clear what I'm arguing. The weight of it is something you get to decide. The weight of it. [Defense counsel] is asking you to question the very foundation of the numbers by asking you to sit here and do something that the California Supreme Court has already done. It's already vetted the science.
>
> "[DEFENSE COUNSEL]: I object to –
>
> "[PROSECUTOR]: Can we stop having objections that are illegitimate?
>
> "[DEFENSE COUNSEL]: It goes to admissibility, not the weight."
>
> The court and attorneys then held a conference in chambers, after which defense counsel stated that he did not want to interrupt unnecessarily, but instead sought "to have a continuing objection to this line of questioning for the reasons I've already stated." The court indicated that was acceptable, and that "we can amplify the record later." The prosecutor continued. In his opening brief, defendant points out that the prosecutor stated: "the whole point of this law is it's not up to the juries and the law doesn't want it to be up to juries to litigate the very admissibility of science in the courtroom once it's been established as accepted. There is a time for that when it's not accepted. When it has to be established. The product rule has been established, and so it's not for you as jurors to say: Wow, I wonder about the Hardy-Weinberg theory of equilibrium."
>
> Later, outside the presence of the jury, the court and counsel discussed the fact that defense counsel made a motion for mistrial during the conference in chambers, which the court denied. Defense counsel stated, "I do have to say that I stand on what I said before. Commenting on what the Kelly-Frye rule is in front of the jury is not appropriate and I welcome an appeal review of that because I'm confident in what the result is going to be."

Wilson, 2012 WL 5928728, at *9-*11.

The California Court of Appeal rejected petitioner's claim, concluding that "the trial court's comment did not instruct the jury that defendant could not legitimately attack the product rule or the Hardy-Weinberg equilibrium as tools that could establish beyond a reasonable doubt that [petitioner's] DNA sample proved him to have been the perpetrator of the crimes charged in

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

10

this case." Id. at *11. The state appellate court further reasoned that the court made clear to the jury that how the process of applying the product rule was used in a particular case is subject to criticism and jury determination while the question of whether the product rule was a legally reliable method to be admissible evidence in any given case has already been established pursuant to state law. Id. at *12.

To the extent petitioner is attempting to argue that the state court's factual determination that the trial court's comment to the jury was not as petitioner characterized it, the court finds that petitioner has not rebutted this presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

In addition, petitioner again points to no clearly established Supreme Court decision or principle addressing his claim that the "jury could not be informed by the prosecutor, with the court's approval, that the basics of the statistical methodology employed by Sentiwany had been found admissible by our Supreme Court, nor why the court's comment prevented him from effectively arguing that this methodology, as applied to the particular circumstances of his case, did not sufficiently establish his guilt." Wilson, 2012 WL 5928728, at *12. Without such a decision establishing a principle that "clearly extends" to the circumstances of this case, petitioner cannot succeed on federal habeas corpus review. See Moses, 555 F.3d at 754. Moreover, petitioner's incorrect interpretation of the prosecutor's statements, combined with the trial court's subsequent comments, defeats petitioner's claim that he was prohibited from arguing that the scientific methods used raised a reasonable doubt as to his guilt.

Accordingly, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

   3.   Prosecutorial vouching

Petitioner claims that the prosecutor engaged in improper vouching when he told the jury that DNA evidence was the most reliable current scientific method for establishing identity, and that the prosecutor believed that once the jury reviewed the evidence, it would find "what the prosecutor thought was the best that forensic science had to offer." Wilson, 2012 WL 5928728,

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

11

at *13. Respondent argues that the claim is procedurally barred, and alternatively, that there was no error.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Id. at 750.

On direct appeal, petitioner conceded that defense counsel did not object to these comments. Wilson, 2012 WL 5928728, at *13. The California Court of Appeal concluded that defense counsel indeed failed to object at all to these statements, and therefore, forfeited this issue on appeal. Id.

The Ninth Circuit has recognized and applied California's contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial. See Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005). Here, petitioner does not argue that defense counsel failed to object to the prosecutor's challenged statements at trial.

Thus, the California Court of Appeal's conclusion that petitioner waived this claim by failing to object is an independent and adequate state bar. See People v. Cole, 33 Cal. 4th 1158, 1201 (2004). The Ninth Circuit has held that the failure to comply with California's rule requiring contemporaneous objection can results in a procedural default of a prosecutorial misconduct claim. See Rich v. Calderon, 187 F.3d 1064, 1069-70 (9th Cir. 1999); see, e.g., Cottrell v. Trimble, No. 04-5943 SMS HC, 2012 WL 304237, at *52 (E.D. Cal. July 25, 2012). Petitioner provides no argument demonstrating cause for the default or actual prejudice as a

1  result of the alleged violation of federal law, or demonstrating that the failure to consider the
2  claims will result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750.
3      Accordingly, the court finds that this claim is procedurally barred.

## CONCLUSION

5      The petition for a writ of habeas corpus is DENIED.

6      The federal rules governing habeas cases brought by state prisoners require a district
7  court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its
8  ruling. Petitioner has failed to make a substantial showing that his claims amounted to a denial
9  of his constitutional rights, or demonstrate that a reasonable jurist would find the denial of his
10 claims debatable or wrong. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Accordingly, a COA
11 is DENIED.

12     The clerk shall terminate all pending motions, enter judgment, and close the file.

13     IT IS SO ORDERED.

14 DATED: _____

*Ronald M. Whyte*

15 RONALD M. WHYTE
United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.13\Wilson436hc.wpd

13

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

PATRICK WILSON,

        Plaintiff,

  v.

WILLIAM KNIPP et al,

        Defendant.

Case Number: CV13-02436 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 7, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Patrick Wilson T50230
Mule Creek State Prison
PO Box 409099
Ione, CA 95640

Dated: April 7, 2015

                Richard W. Wieking, Clerk
                By: Jackie Lynn Garcia, Deputy Clerk